1  DEAN BROWNING WEBB, ESQUIRE, ricoman1968@aol.com
   ATTORNEY AND COUNSELOR AT LAW
2  THE LAW OFFICES OF DEAN BROWNING WEBB
   8002 N.E. HIGHWAY 99, SUITE B, PMB # 256
3  VANCOUVER, WASHINGTON ZIP CODE 98665-8833

4  TELEPHONE: [503] 629-2176

5

6  ATTORNEYS AND COUNSELORS AT LAW FOR PLAINTIFF:

7  RHONDA FARRAH

8

9  UNITED STATES DISTRICT COURT

10  NORTHERN DISTRICT OF CALIFORNIA

11  SAN JOSE DIVISION

12  RHONDA FARRAH,                    ) CIVIL NO.: C07-06044 JW
                                      )
13                                    ) JURY TRIAL DEMAND
                      Plaintiff,      )
14                                    ) FIRST AMENDED COMPLAINT:
        vs.                           )
15                                    ) FOR CONTRAVENTION OF
    MONTEREY TRANSFER &               ) FEDERAL MOTOR CARRIER
16  STORAGE, INC., a California       ) SAFETY ADMINISTRATION
    corporation,                      ) ACT
17                                    )
                                      ) [Title 49 U. S. C. §§ 14706(d), (e)(1)]
18                    Defendant.      )
                                      )
19  _____

20      Plaintiff Rhonda Farrah hereby complains and alleges against Monterey
21  Transfer & Storage, Inc., a California corporation, as follows.

22

23      COMPETENT FEDERAL SUBJECT MATTER JURISDICTIONAL
24                              ALLEGATIONS

25      1.   Competent subject matter jurisdiction and venue exists, in whole
26  and/or in part, pursuant to the following federal statutes:
27      A.   Federal Common Carrier Jurisdiction [Title 49 United States Code
28           Section 14706(d), (e)(1)];

FIRST AMENDED COMPLAINT

B. Federal Question Jurisdiction [Title 28 United States Code §1331]; and,

C. Federal Regulation of Commerce Jurisdiction [Title 28 United States Code §1337].

PARTIES and FACTUAL ALLEGATIONS

2. Plaintiff Rhonda Marie Farrah ["Plaintiff"] is a citizen and resident of the City of Monterey, County of Monterey, State of California.

3. Monterey Transfer & Storage, Inc., ["Monterey"] is, and at all times material herein was, a corporation duly organized and existing under the general corporation laws of California, maintaining its principal place of business within the City of Salinas, County of Monterey, State of California, and is engaged in activities that affect federal commerce. Monterey is motor carrier engaged in activities that affect federal interstate commerce, authorized pursuant to the Federal Motor Carrier Safety Administration Act.

4. Plaintiff is the previous owner of a single family personal residence situated at 3320 Kingsley Court, Pebble Beach, California ["Pebble Beach Property"]. On or about January 9, 2002, Plaintiff, acting by and through her attorney, Barry K. Rothman, ("Rothman") requested Monterey to submit a written estimate of costs and expenses to package and transfer various tangible personal property items in the Pebble Beach Property to be stored at Monterey's storage facility at 414 West Market Street, Salinas, CA. Monterey's agent, Brian D. Reppert, submitted to Rothman a written estimate of costs of $1,860.00.

5. Plaintiff alleges that at all times material therein, Rothman acted upon plaintiff's behalf both as plaintiff's attorney and also under an express written power of attorney executed in Rothman's favour, dated October, 2001, and therefore acted in a fiduciary representative capacity of trust and confidence on behalf of plaintiff.

6. During the month of January, 2002, Monterey's agent, Brian D.

2   FIRST AMENDED COMPLAINT

Reppert, also communicated with Plaintiff's sister, Sonia M. Farrah, via telephone, regarding the packaging and transfer of the various tangible personal property items from the Pebble Beach Property. Sonia M. Farrah was physically present at the residence to witness the packaging and transferring of those property items, and the ultimate delivery thereof to the storage facility for placement within storage vaults. A total of three [3] vaults were leased by plaintiff that were stored upon Monterey's business facility site in Salinas, CA., and maintained under exclusive control and possession of Monterey at all times material herein.

7.    On or about January 11, 2002, Monterey submitted to Rothman to execute upon behalf of plaintiff an Agreement for Moving Services, Carrier's Order # W/B # 1031, Lot # 15303. Rothman failed to elect an alternate method of coverage for loss and damage, which included: (A). 60 cents per pound, per article; (B). Actual cash value, and ©). Full value protection. Rothman also failed and/or refused to execute and return to Monterey the original Agreement for Moving Services. As a direct and proximate result of Rothman's failure to elect an appropriate coverage for loss and damage, as well as Rothman's failure to otherwise apply for and obtain appropriate insurance loss coverage for the benefit of plaintiff's stored tangible personal property items, plaintiff was limited to damages not to exceed $20,000, as provided under tariff by California Public Utilities Commission.

Plaintiff further alleges that Monterey failed, omitted, and/or otherwise did not provide to Rothman, under said agreement, with the "IMPORTANT INFORMATION BOOKLET," as required by the California Public Utilities Commission that was to be provided prior to the moving and storage of plaintiff's tangible personal property items. The agreement does not evidence Rothman's written initials and date, as required by the agreement, that he received the "IMPORTANT INFORMATION BOOKLET.".

8.    On or about February 4, 2002, Rothman sent a letter to Monterey's agent, Brian D. Reppert, requesting that Monterey deliver an inventory list to

3    FIRST AMENDED COMPLAINT

1  Rothman of all items in storage for review. Monterey complied with this request,
2  providing the inventory list to Rothman.

3      9.    Plaintiff alleges that commencing from January, 2002, through and
4  including the delivery of plaintiff's household goods on January 13, 2005, and
5  beyond the delivery date in January, 2005, including the date of the initiation of these
6  proceedings, Rothman, acting as both plaintiff's attorney and pursuant to an
7  expressly written power of attorney, was, is, and remains, responsible for paying
8  the monthly charges imposed by Monterey upon plaintiff for the storage of three [3]
9  vaults containing plaintiff's tangible personal property items.

10      10.    Plaintiff alleges that sometime in in April, 2004, Monterey's general
11  manager and agent, agent Trae Schick, allegedly notified Rothman, via telephone,
12  that one of three vaults leased by plaintiff was inexplicably lost from the storage
13  facility by Monterey and that Monterey's efforts to retrieve and locate the missing
14  vault were unsuccessful. Plaintiff further alleges that Monterey's general manager
15  and agent, Schick, failed and/or did not submit a written letter Rothman and to
16  Rothman's offices to confirm, notify, and/or inform Rothman of the lost vault,
17  that Monterey lost the vault, the facts and circumstances that gave rise to the lost
18  vault, and similarly failed and/or omitted to notify and/or inform Rothman and
19  Rothman's office of the of the nine [9] month time frame from date of purported
20  loss of plaintiff's personal property items that were encased within the lost vault
21  to submit to Monterey a written claim for damage and loss proximately caused by
22  Monterey's failure and/or omission to protect, preserve, and maintain safe and
23  secure plaintiff's personal property items that were encased within the vault lost by
24  Monterey.

25      11.    On or about January 13, 2005, Monterey, by express written
26  letter instruction of Rothman, delivered plaintiff's tangible personal property items
27  to plaintiff's designated place of residence at 29 La Rancheria, Carmel Valley, CA
28  93924.

    4    FIRST AMENDED COMPLAINT

1    12.    Plaintiff alleges that at the time Monterey delivered plaintiff's tangible personal property items within its exclusive control and possession to the Carmel Valley, CA address, Monterey failed and/or omitted to deliver the following tangible personal property items that were owned and belonged to plaintiff that were encased within the one vault held under the exclusive possession and control of Monterey that was lost, stolen, destroyed, and/or otherwise unaccounted for by Monterey. Plaintiff further alleges that Monterey failed and/or omitted to disclose to plaintiff what efforts, if any, including the failure to file a police report with the City of Salinas, and/or conduct an investigation, to locate, find, and recover said properties owned by plaintiff, and that Monterey allegedly initiated to search, find, and/or locate said tangible personal property items that were owned and belonged to plaintiff, with an estimated actual value of $205,010.00 that were contained within the vault lost, destroyed, converted, stolen, and/or otherwise unaccounted for by Monterey. Attached hereto and incorporated herein as Exhibit No.: **1** is the Submission of Statement of Claim, Including Attachment to Statement of Claim Submitted Upon Behalf of Rhonda M. Farrah for Losses and Damages - 18 May 2006 - Itemization of Lost Container Data.

13.    On February 17, 2006, and again on March 3, 2006, plaintiff, through present counsel, sent a letter, via facsimile, to Monterey's Trae Schick, general manager, advising that counsel represented plaintiff for purposes of submitting a claim for damages arising from the loss, theft, conversion, and/or destruction of plaintiff's tangible personal property items proximately caused by Monterey as alleged herein above. Plaintiff's counsel expressly requested Schick to provide the requisite insurance claim form for purposes of claim submission, a copy of the contractual agreement provided by Monterey to plaintiff, and that such information and materials were to be provided. Plaintiff's counsel's letters also advised Schick that plaintiff her self had previously requested of Schick's office copies of the requisite insurance claim form and copy of the contractual agreement, and that at no

time had plaintiff received such requested materials.

14. On March 16, 2006, plaintiff's present counsel sent a letter, via electronic mail, acknowledging receipt of Schick's March 11, 2006 letter, accompanied with a customer quick report, copies of the inventory generated by Monterey, and letters from plaintiff's former counsel, Rothman, dated February 4, 2002, and January 3, 2005. Said letter also confirmed Schick's previous statement to plaintiff's counsel, via telephone, in early March, 2006, that Monterey did not file a police report regarding the lost or stolen Monterey container vault that held plaintiff's tangible personal property items, that Schick had not produced any documents from Monterey informing Rothman or plaintiff, by letter, of the alleged lost or stolen container vault, and taking issue with Schick's March 11, 2006 letter wherein he stated that plaintiff was out of time to submit a loss claim statement; moreover, plaintiff's counsel challenged Schick's letter wherein he stated that he, allegedly, personally handed a statement of claim form to plaintiff's daughter, Amanda Farrah, in April, 2004, and that form of service was to suffice, rather than transmit such statement of claim form to Rothman, plaintiff's attorney and agent, who was responsible for handling the matter, and that Amanda Farrah lacked authorization and/or capacity to act upon behalf of plaintiff.

Plaintiff's present counsel had previously sent a letter to Schick, dated March 10, 2006, requesting Schick to produce documents relative to Monterey employees and/or non employees that had access to the container vaults, and what reasons Monterey failed, omitted, and/or did not file a police report relative to the stolen container vault that contained plaintiff's personal property items.

15. Plaintiff's counsel requested plaintiff to provide a list of the type of items that were lost and/or stolen from the container vault that Monterey allegedly lost and/or stole from plaintiff for purposes of submitting a claim for loss and damages.

16. On May 19, 2006, plaintiff, by and through counsel, submitted to

6    FIRST AMENDED COMPLAINT

1  Monterey, via Federal Express, a Statement of Claim, referenced herein as Exhibit
2  No.: **1**, upon behalf of plaintiff for damages arising from the loss of the tangible
3  personal property items that were contained within the missing vault admittedly lost
4  by Monterey, by and through its own express, unequivocal, explicit admission of
5  Monterey's agent, Trae Schick. The Statement of Claim specifically identified each
6  and every individual item of tangible personal property that belonged to plaintiff
7  that Monterey lost, disposed of, and/or otherwise failed to maintain for the plaintiff
8  that was within Monterey's exclusive control and/or possession. Attached hereto
9  and incorporated herein as Exhibit No.: **1** is the Submission of Statement of Claim,
10 Including Attachment to Statement of Claim Submitted Upon Behalf of Rhonda M.
11 Farrah for Losses and Damages - 18 May 2006 - Itemization of Lost Container Data.
12 Plaintiff alleges that during all times material herein Monterey exercised exclusive
13 control and possession over the three [3] container vaults holding plaintiff's tangible
14 personal property items, which were located upon Monterey's business premises.
15     17.    On or about June 4, 2006, plaintiff's counsel received a letter dated June
16 1, 2006, from Joy Papailias, agent of York Claims Service, Inc., the insurance carrier
17 for Monterey, identifying York as the insurance carrier for its insured, Monterey, and
18 acknowledged that York had received the submitted written statement of claim for
19 damages and loss previously submitted to Monterey, Exhibit No.: **1,** the Submission
20 of Statement of Claim, Including Attachment to Statement of Claim Submitted
21 Upon Behalf of Rhonda M. Farrah for Losses and Damages - 18 May 2006 -
22 Itemization of Lost Container Data. On or about July 19, 2006, plaintiff's counsel
23 received a letter dated July 16, 2006, from Joy Papailias, agent of York Claims
24 Service, Inc., the insurance carrier for Monterey, acknowledging that she had
25 received certain documents from Trae Schick, general manager at Monterey, relative
26 to the contract for moving and storage, including inventories, letters from Rothman's
27 office, and that she had spoken with Schick in regard thereto. The claims agent
28 inquired of plaintiff's counsel as to whether Rothman's office had or would produce

1  his office file on the matter, and if Rothman's office had filed a police report
2  regarding the loss and/or theft of plaintiff's personal property items that were encased
3  within the lost or stolen container vault within the exclusive control and possession
4  of Monterey at the time of loss and/or theft.

5  18.  On or about August 17, 2006, plaintiff's counsel received a letter dated August 12, 2006, postmarked, August 14, 2006, from Joy Papailias, agent of York Claims Service, Inc., the insurance carrier for Monterey. Papailias's letter confirmed the telephone conversation with plaintiff's counsel of July 24, 2006, regarding the submitted written claim for damages, as well as in response to counsel's letters received by Papailias, dated July 26, 2006, and August 4, 2006, regarding the submitted written claim for damages. The August 12, 2006 letter further stated, in part, that plaintiff's attorney/agent, Rothman, failed to ascribe an additional value on the household goods, or paid for, and due to the fact that such valuation was not noted upon the contract, the Maximum Rate Tariff 4, issued by the California PUC, provides for a default valuation of actual cash value with a limit of $20000 as noted within that letter. The letter also quoted the following language, which appeared on the reverse side of the bill of lading, which was the contract used for the move:

> ITEM 136 DECLARATION OF VALUE – VALUATION RATES
> 2.  Unless shipper expressly declares a value other than $20,000 for the shipment, carrier's maximum liability for lost and damaged articles in a shipment shall up to $20,000 of actual cash value.
> TERMS AND CONDITIONS
> 2.  CARRIER LIABILITY FOR LOSS OR DAMAGE TO HOUSEHOLD GOODS IS LIMITED AS FOLLOWS AND IS REQUIRED BY ORDER OF THE CALIFORNIA PUBLIC UTILITIES COMMISSION UNDER ITS GENERAL ORDER NO. 136

19.  The August 12, 2006, York Claims Service letter also stated:

8   FIRST AMENDED COMPLAINT

|   |   |   |
|---|---|---|
| 1 |  | "At this time we have not been provided with any documentation to |
| 2 |  | show proof of ownership or proof of value of any items in the claim. In |
| 3 |  | order to process the claim, it is necessary for Ms. Farrah to supply this |
| 4 |  | documentation. This can take the form of original receipts, owner's |
| 5 |  | manuals, copies of credit card bills, photos with the items in the photo, |
| 6 |  | internet pricing, etc.  In order to move forward with the claim, |
| 7 |  | something of this nature will need to be supplied." |
| 8 | 20. | The August 12, 2006, York Claims Service letter also stated: |
| 9 |  | "A claim has been submitted in the amount of $205,010.00 with the |
| 10 |  | allegation    that the items that total this amount have been lost or |
| 11 |  | stolen.  Despite huge loss, Ms. Farrah has not filed a police report. |
| 12 |  | Further, while the claim includes $9,000.00 worth of silver, $234,000.00 |
| 13 |  | worth of furs, jewelry, artwork etc, she did not carry personal property |
| 14 |  | insurance on these items of her own at any time. |
| 16 |  | The shipment was delivered six months prior to Ms. Farrah returning to |
| 17 |  | her home. |
| 19 |  | While we are willing to further investigate the claim there are limitations |
| 20 |  | noted on the billing lading under Terms and Conditions 2 [,] which |
| 21 |  | would limit certain categories of goods as follows: |
| 22 |  | [B.]   [no liability provided on certain identified items, unless the item |
| 23 |  |     is specifically listed on the shipping document by description and |
| 24 |  |     value: to wit, precious metals, jewelry, watches, precious stones, |
| 25 |  |     pearls, gold, silver or platinum articles, which includes, under |
| 26 |  |     Note 2,  gold, silver and platinum household articles such as |
| 27 |  |     silverware, coffee-service sets, trays, candlesticks, and dishes]. |
| 28 |  | [C.]   [no liability provided for loss or damage to articles of |

9    FIRST AMENDED COMPLAINT

extraordinary value except under circumstances where each such articles is specifically listed on the carrier's shipping document or inventory of the shipment and specifically designated as an article of extraordinary value and by listing the value thereof. . . . As used herein, the term "articles of extraordinary value" refers to those articles tendered to a carrier for transportation which because of uniqueness or rarity have a value substantially in excess of the cost of newly manufactured items of substantially the same type and quality apart from such uniqueness or rarity, such as, but not limited to, . . . , antique furniture, heirlooms, paintings, sculptures, and other works of art, . . ."

21. Plaintiff's present attorney advised Joy Papailias, agent of York Claims Service, Inc., by letter and by telephone, on September 8, 2006, and September 13, 2006, respectively, and during 2007, that plaintiff did not, and would not have retained, any form of documents evidencing receipts, orders, canceled checks, photos, requisition forms, orders, or any document that would otherwise evidence that the tangible personal property items were in fact owned and belonged to plaintiff, contained within the vault that was lost, converted, stolen, and/or otherwise found to be unaccountable by Monterey, and under Monterey's exclusive control and possession at all times. Counsel further advised York Claims agent that many of the tangible personal property items were gifts plaintiff received from others over many years, and that plaintiff would not no reason to possess or have receipts under any circumstances.

22. During late 2006, and into 2007, Joy Papailias, agent of York Claims Service, Inc., informed plaintiff's present counsel, by letter, that if plaintiff remained interested in pursuing recovery under the claim, then plaintiff would have to produce documentation of ownership of the tangible personal property items lost and/or stolen while under the exclusive control and possession of Monterey. Such

10     FIRST AMENDED COMPLAINT

letters were received from York Claims Service, dated December 15, 2006, January 15, 2007, and March 7, 2007.

23. None of the York Claims Services letters denied plaintiff's claim, nor did any of said letters assert, advance, and/or otherwise contend that plaintiff's submitted claim for loss and damages was foreclosed or barred. Plaintiff's counsel sent letters to York Claims Services, received by York's agent, Joy Papailias, dated July 26, 2006, August 6, 2006, August 15, 2006, December 30, 2006, and March 26, 2007, inquiring of York whether plaintiff's written submitted statement of claim for damages was or was not denied, specifically stating in these letters that:

> Title 49 United States Code Section 14706(e)(1) specifically states that the period for bringing a civil action is computed from the date the carrier gives a person written notice that the carrier has disallowed any part of the claim specified in the notice. Subsection (2)(B) states that communications received from a carrier's insurer shall not constitute a disallowance of any part of the claim unless the insurer, in writing, informs the claimant that such part of the claim is disallowed, provides reason for such disallowance, and informs the claimant that the insurer is acting on behalf of the carrier.

By York's own silence and/or omission to respond to those letters, York failed and refused to comply with the afore referenced federal statutory provision, notwithstanding plaintiff's consistent and persistent demands for issuance of a denial of claim in order to proceed thereunder.

24. Plaintiff seeks to recover damages according to offer of proof at time of trial. Plaintiff alleges that the conduct of Monterey was wilful, wanton, and reckless, thereby warranting an award of exemplary and punitive damages. Plaintiff is also entitled to recover attorneys' fees and costs. Plaintiff complied with the conditions of Title 49 United States Code Section 14706(e)(1) for purposes of initiating these proceedings.

11    FIRST AMENDED COMPLAINT

## FIRST CLAIM FOR RELIEF
[For Contravention of Title 49 U.S.C. § 14706]

[Against Defendant]

25  For Plaintiff's First Claim for Relief, plaintiff realleges and incorporates Paragraph 1 through 24.

26.  Defendant is liable to plaintiff for its full, actual damages as a motor carrier under Title 49 U.S.C. § 14706.

27.  Defendant, at all times material herein, exercised absolute and complete dominion and control over plaintiff's tangible personal property items contained within those container vaults, and defendant lost, caused to be lost, destroyed, caused to be destroyed, and/or otherwise failed to search, locate, find, and/or otherwise account for one [1] container vault that held plaintiff's tangible personal property items.

28.  As a result of defendant's conduct and actions, defendant is liable for plaintiff's actual damages in an amount according to offer of proof at time of trial.

29.  Plaintiff alleges that the conduct of Monterey was wilful, wanton, and reckless, thereby warranting an award of exemplary and punitive damages. Plaintiff is also entitled to recover reasonable attorneys' fees and costs under Title 49 U.S.C. § 14704(e). Plaintiff complied with the conditions of Title 49 United States Code Section 14706(e)(1) for purposes of initiating these proceedings.

## PRAYER

WHEREFORE, plaintiff prays to recover judgment against Monterey, as follows:

1.  For compensatory damages according to offer of proof at time of trial.
2.  For exemplary and punitive damages.

12   FIRST AMENDED COMPLAINT

3. For attorneys' fees.

4. For costs.

5. For such other and further relief as the Court finds just and proper in the premises.

Dated: 31 January 2008.

        DEAN BROWNING WEBB
        ATTORNEY AND COUNSELOR AT LAW

        */s/Dean Browning Webb*
        DEAN BROWNING WEBB
        ATTORNEY S FOR PLAINTIFF:
        RHONDA FARRAH

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands that this cause be tried before a jury pursuant to the Seventh Amendment of the Constitution of the United States of America, Rule 38(b) of the Federal Rules of Civil Procedure, and Local Civil Rule 3.6 of the Local Civil Rules of the United States District Court for the Northern District of California.

Dated: 31 January 2008.

        DEAN BROWNING WEBB
        ATTORNEY AND COUNSELOR AT LAW

        */s/ Dean Browning Webb*
        DEAN BROWNING WEBB
        ATTORNEY S FOR PLAINTIFF:
        RHONDA FARRAH